**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CENTER FOR BIOLOGICAL DIVERSITY,
378 N. Main Avenue
Tucson, AZ 85701,

     *Plaintiff*,

     v.

U.S. FISH AND WILDLIFE SERVICE
1849 C Street, NW
Washington, DC 20240,

BRIAN NESVIK, in his official capacity as
Director of the U.S. Fish and Wildlife Service,
1849 C Street, NW
Washington, DC 20240,

and DOUG BURGUM, in his official capacity
as Secretary of the U.S. Department of the
Interior,
1849 C Street, NW
Washington, DC 20240,

     *Defendants*.

Case No. 1:26-cv-1381

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity (the "Center") challenges the failure of

the U.S. Fish and Wildlife Service (the "Service") to issue a final listing rule for the salamander

mussel, in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary,

congressionally mandated deadline. The Service's failure to meet the ESA deadline for the

salamander mussel delays lifesaving protections for the mussel, increasing its risk of extinction.

2. Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order

declaring that the Service violated Section 4(b)(6)(A) of the ESA, 16 U.S.C. § 1533(b)(6)(A), by

failing to issue a timely final listing rule and critical habitat designation for the salamander mussel and directing the Service to issue the final rule by a date certain.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question).

4. This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and the Administrative Procedure Act, 5 U.S.C. § 706(2).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(c) because Defendants' personal place of business is in this judicial district.

## PARTIES

6. Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat, including the salamander mussel. The Center is headquartered in Tucson, Arizona, with offices throughout the United States and has more than 101,000 active members throughout the country.

7. The Center brings this action on behalf of its staff and members who derive recreational, educational, scientific, professional, and other benefits from the salamander mussel and its habitat. Plaintiff's members' interests in protecting and recovering this mussel and its habitat are directly harmed by the Service's failure to issue a timely final rule, delaying critical protections under the ESA that would put the salamander mussel on a path to recovery.

8. For example, Center member Bryan Newman is a hobby naturalist, aspiring conservation author, and wildlife enthusiast based in Blaine, Minnesota. He lives near the St.

2

Croix River which provides important habitat for many species, including the salamander mussel. For several decades, Mr. Newman has taken annual trips to various sections of the St. Croix River, where he actively looks for and observes wildlife, paying particular attention to freshwater mussels. He has spent a considerable amount of time searching for mussels along the shorelines and shallow waters and often attempts to identify them using taxonomic keys. Last summer, Mr. Newman dedicated a day to traverse a mile of the St. Croix River; he and others found more than fifteen mussel species, reinforcing his love and appreciation for the river as providing key habitat for a diverse array of mussel species, including the salamander mussel. He intends to continue to visit the salamander mussel's habitat every year, for as long as he is able. Mr. Newman treasures the natural habitat of the salamander mussel and would be personally, morally, aesthetically, and recreationally harmed if the species were to decline even further or cease to exist. Because the salamander mussel is an indicator species of aquatic health, the loss of this species will lessen his experience in nature and ability to recreate in clean rivers. The Service's failure to protect the salamander mussel diminishes Mr. Newman's chances of ever observing the species on future trips to the St. Croix River and causes him personal harm at the loss of a unique part of America's natural heritage and beauty. Mr. Newman's recreational and aesthetic enjoyment of the St. Croix River is harmed by the Service's failure to finalize protections for the salamander mussel and to designate fifty-two river miles of critical habitat for the species within the St. Croix River.

9.      The Service's violation of the ESA's deadline has delayed ESA protections for the salamander mussel. This inaction harms Plaintiff's members' interests in the salamander mussel as the Service simply stands by while the mussel continues on a pathway toward extinction, decreasing the likelihood that the Center's members will encounter the species as part

of their personal and professional excursions. These injuries are actual, concrete injuries presently suffered by the Center's members, are directly caused by Defendants' acts and omissions, and will continue unless and until the Court grants relief. The relief sought would redress these injuries by providing ESA protection for the salamander mussel and promoting its conservation and recovery. The Center and its members have no other adequate remedy at law.

10.    Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the U.S. Department of the Interior charged with implementing the ESA for the salamander mussel. The Secretary of U.S. Department of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

11.    Defendant BRIAN NESVIK is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Nesvik is sued in his official capacity.

12.    Defendant DOUG BURGUM is the Secretary of the U.S. Department of the Interior ("Secretary") and has the ultimate responsibility to administer and implement the provisions of the ESA and to comply with all other federal laws applicable to the U.S. Department of the Interior. Defendant Burgum is sued in his official capacity.

## STATUTORY FRAMEWORK

13.    The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). The ESA's primary purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved" and "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

4

14.    The Act directs the Secretary of the Interior, through the Service, to determine which species of plants and animals are "endangered" and "threatened" and place them on the list of protected species—otherwise known as "listing" a species. *Id*. § 1533.

15.    The Secretary has delegated its administration of the Act to the Service for freshwater aquatic species, including the salamander mussel. 50 C.F.R. § 402.01(b).

16.    ESA Section 4 requires the Service to protect imperiled species by listing them as "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). A species is "endangered" when it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

17.    The ESA defines "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

18.    The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

19.    The Service must list a species if the species meets the definition of "endangered" or "threatened" due to "any one or a combination of" these five listing factors. 50 C.F.R. § 424.11(c); *see* 16 U.S.C. § 1533(a)(1).

20.    If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id.* §§ 1532(6), (20).

21.    The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." *Id.* § 1533(b)(1)(A).

22.    The ESA allows any interested person to formally petition the Service to list a species as endangered or threatened. 16 U.S.C. § 1533(b)(3)(A); 50 C.F.R. § 424.14(a).

23.    To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby interested persons may petition the Service to list a species as endangered or threatened. *Id.* § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines.

24.    First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected, and the process concludes.

25.    If the Service determines in the 90-day finding that a petition presents substantial information indicating that listing "may be warranted," the Service must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

26.    Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but

6

precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

27.    If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to list the species as endangered or threatened and to designate critical habitat for the species. *Id.* § 1533(a)(3)(A), (b)(3)(B)(ii).

28.    Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species and designate critical habitat. *Id.* § 1533(b)(6)(A).

29.    If the Service instead issues a 12-month finding that listing the species is "not warranted," the process concludes, and that finding is a final agency action subject to judicial review. *Id.* § 1533(b)(3)(C)(ii).

30.    Once a species is listed, the Act provides both procedural and substantive protections to ensure not only the species' continued survival, but also its ultimate recovery. For example, Section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species and to develop and implement recovery plans. *Id.* §§ 1533(a)(3), (f); 1532(5). Other provisions authorize the Service to acquire land for the protection of listed species, *id.* § 1534, to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

31.    In addition, ESA Section 7(a)(2) requires all federal agencies to consult with the Service to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of designated critical habitat. *Id.* § 1536(a)(2).

32.     ESA Section 9 makes it unlawful to "take" any endangered species, which means no person can "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" an endangered species without first receiving authorization from the Service. *Id.* §§ 1532(19) (defining "take"), 1538.

33.     Thus, listing a species as endangered or threatened is the crucial first step in the ESA's system of species conservation and recovery.

## FACTUAL BACKGROUND

### The Salamander Mussel



*Salamander Mussels*, Photo Credit: Megan Bradley/*USFWS*

34.     The salamander mussel (*Simpsonaias ambigua,* pictured above) is a small, thin-shelled freshwater mussel species that inhabits rivers and streams across 14 U.S. states (Arkansas, Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, New York, Ohio, Pennsylvania, Tennessee, West Virginia, and Wisconsin) and in Ontario, Canada. These mussels thrive in flowing freshwater habitats containing slab rock and bedrock, which allows the mussel to make contact with a solid surface that provides protection from high-velocity currents.

35.     The salamander mussel is an especially unique freshwater mussel species. While other mussels rely on various fishes as host species for successful reproduction, as its name suggests, the salamander mussel is the only freshwater mussel to use a salamander as its host. Specifically, the salamander mussel depends on its unique relationship to its host species, the mudpuppy (*Necturus maculosus*), for successful reproduction.

36.     The salamander mussel's reproduction process is similar to other freshwater mussels: larvae, called glochidia, are held in the female mussel's gills for a period of months until they are released and attach to their host species—here, the mudpuppy. The larvae will then transform into juvenile mussels and drop from the mudpuppy's gills into the substrate several weeks later.

37.     Freshwater mussels are commonly known as the "liver of the river" because they filter toxins and other pollutants out of water and reduce turbidity by removing algae, sediment, and other harmful substances. Freshwater mussels can even filter out pharmaceuticals, personal care products, herbicides, flame retardants, *E. coli*, and avian influenza. A single mussel can filter up to 15 gallons of water each day.

38.     The salamander mussel faces the possibility of extinction from a multitude of threats. Like most freshwater mussels, this species is highly sensitive to excessive contaminants in the water, such as metals and ammonia. Other threats to the mussel include reduced habitat connectivity, habitat alteration, disturbances in stream flow, and vulnerability of its host species, the mudpuppy.

39.     Climate change further exacerbates these threats to the salamander mussel as water conditions are impacted from increased temperatures, varied frequency in precipitation, and drought in different regions. The salamander mussel's continued survival depends on stable

water quality parameters such as water temperature, dissolved oxygen, nutrient levels, and flow regimes.

40.     The salamander mussel was once historically widespread across all of 14 U.S. states, with a historical range spanning from the Midwest and Mid-Atlantic to the Southeast. The mussel occurred in both small streams and large rivers and in lakes. Many of the mussel's populations are now considered "historical," meaning there have been no observations or data available regarding the mussel after 1970, particularly in Iowa, Illinois, and Lake Erie.

41.     Recent studies have found that 40 percent of all known salamander mussel populations are either extirpated or historical, and around 95 percent of the remaining populations across its current range are at "high or moderate risk."

42.     Over 98 percent of the remaining salamander mussel populations are at high risk of catastrophic events from oil and gas or coal activities.

43.     Around one-third of the remaining, extant salamander mussel populations in the U.S. are known from only a single record, or very few records, within a segment of an occupied river, making them extremely vulnerable to extirpation from a singular event.

**The Center's Listing Petition and the Service's Response**

44.     On April 20, 2010, the Center and other conservation partners petitioned the Service to list the salamander mussel. The petition documented threats to the salamander mussel, primarily from modifaction and degradation of its habitat such as by river impoundment, channelization, and industrial and residential development. Other threats the petition identified included water pollution from a variety of sources, impacts to the mussel's host species, invasive species infiltration, and population isolation and low gene flow.

45.     On September 27, 2011, the Service published a positive 90-day finding, which determined that the Center's 2010 petition provided substantial scientific information that listing the salamander mussel may be warranted. *See* 76 Fed. Reg. 59836 (Sept. 27, 2011).

46.     Over a decade after its 90-day finding, on August 22, 2023, the Service proposed to list the salamander mussel as an endangered species under the ESA. *See* 88 Fed. Reg. 57224 (Aug. 22, 2023). Concurrently with the proposed rule, the Service proposed to designate 37 units of critical habitat for the salamander mussel, including approximately 2,012 river miles across 11 states.

47.     The deadline for the Service to issue a final listing rule and designate critical habitat was one year from the proposed rule, or by August 22, 2024. The deadline for publishing the final listing rule has since passed.

48.     The Center notified Defendants of their ESA violations, as required by 16 U.S.C. § 1540(g)(2)(C), by a letter that the Service received on February 19, 2026, more than 60 days prior to the filing of this complaint.

49.      Because Defendants have not remedied the violations set out in the notice letter, an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF

**Violation of the ESA for Failure to Issue a Final Listing Rule for the Salamander Mussel**

50.     Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

51.     Within one year of the proposed listing rule, the ESA requires the Service to publish a final rule implenting its determination or a notice that the one-year deadline is being extended. 16 U.S.C. § 1533(b)(6)(A).

52.     In response to the Center's petition to list the salamander mussel, the Service proposed to list the salamander mussel as an endangered species on August 22, 2023, and thus the final listing rule was due on August 22, 2024.

53.     The Service has yet to finalize and publish the statutorily required final listing rule for the salamander mussel.

54.     Defendants have failed to perform their nondiscretionary duty to timely issue a final listing rule in violation of the ESA. 16 U.S.C. § 1533(b)(6)(A).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1.  Declare that Defendants violated the ESA by failing to issue a timely final listing rule in response to the Center's petition to list the salamander mussel under the ESA;

2.  Provide injunctive relief compelling Defendants to issue the final rule by a date certain;

3.  Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4.  Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5.  Provide such other and further relief as the Court deems just and proper.

Respectfully submitted and dated this 23rd day of April 2026.

/s/ Margaret E. Townsend
Margaret E. Townsend (DDC BAR #OR0008)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374

Phone: 971-717-6409
mtownsend@biologicaldiversity.org

Laurel Jobe (TN BPR No. 043563)
Center for Biological Diversity
P.O. Box 4268
Chattanooga, TN 37405-9998
Phone: (423) 441-8558
ljobe@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

Lindsay Reeves (La. Bar No. 32703)
Center for Biological Diversity
3436 Magazine Street, FRNT PMB 539
New Orleans, LA 70115
Phone: (504) 342-4337
lreeves@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

*Attorneys for Plaintiff*